## Adams, &c. *vs.* Gardiner.

ERROR TO NELSON CIRCUIT.

Judge MARSHALL delivered the opinion of the court.

Case 13.

June 28.

1. A plea of former suit brought cannot avail to abate the second suit, unless the parties are the same, nor then, if the first be dismissed before the plea is filed.

2. A bailee for hire is bound to ordinary care and diligence in the preservation of the thing hired. If he transfer the possession, still being bound to the owner, the transferree may be responsible to him.

3. If A hire a slave for a year, and at the end of six months hire to B for the remainder of the year, B is responsible to the owner for any permanent injury to the slave, arising from neglect. He who voluntarily takes possession of another's property is bound to take reasonable care for its preservation.

4. A witness is not incompetent on account of interest, unless that interest be direct, nor is he incompetent where the verdict for either party would equally benefit him.

Gardiner, the owner of a female slave, Kitty, hired her for the year 1848 to one Lemmons, who in March of that year hired her to H. C. and J. Q. Adams for the residue of the term. While in their possession she was taken sick, and after an illness of some weeks died on the seventh of August. In August, 1849, Gardiner brought this action on the case against the two Adamses, alleging the facts above stated, and that it was the duty of the defendants to have taken such care of the health of Kitty, and in case of her sickness to have furnished such accommodation, food, attention, medicine, and medical attendance, as men of ordinary prudence would extend and give to their own slave in like case ; that they neglected, in various designated particulars, to extend such care, and that in consequence of that neglect she died. And for the injury to his reversionary interest he claims $500 in damages.

Case stated

The defendants pleaded in abatement that a former suit had been brought by the plaintiff against them in the same court for the same cause, which, after having been abated as to one of the defendants, was

1. A plea of former suit brought cannot avail to abate the second suit, unless the par-

ADAMS, &c.
vs.
GARDINER.

ties are the
same, nor then,
if the first be
dismissed be-
fore the plea is
filed.

pending when the present action was commenced, and until the — day of the (then) present term, when it was dismissed by the plaintiff, for proof of which they refer to the record. This plea was adjudged bad on the ground that the former suit had been dismissed before the filing of the plea, which appeared on its face. And although there is some diversity in the authorities as to the necessity of averring in such a plea that the former suit is still pending, we are of opinion that the dismissal of the first suit, before the plea is filed in the second, removes every substantial ground for abating the second. The presumption is, when a party brings a second action while a prior one for the same cause is pending, that he labors under some disadvantage in the first suit which renders the second necessary, though with the certainty of incurring the costs of one of them. And the dismission of the first action at the earliest opportunity after the commencement of the second, tends to negative the presumption that the proceeding was intended to vex and harass the other party.

In the present case these presumptions are made certainties by the plea itself, which shows that although the first suit had been commenced against both defendants, it had been abated as to one, while in the second action both defendants were before the court. It shows, too, that the first suit was dismissed at the earliest opportunity after the commencement of the second; and it does not appear that the process in the second suit could have been served on both defendants, if it had been delayed until the dismissal of the first, which could only take place during the session of the court. In addition to this, the plea shows that the first action, even at the commencement of the second, was not pending against the same persons that were sued in the second. It is, therefore, not sustained by a strict application of the rule as laid down even by those authorities which regard the continued pendency of the first suit until the filing of the plea, as not being essential to its validity.

The plea in abatement having been overruled, the parties went to trial on the plea of not guilty; a verdict was rendered in favor of the plaintiff for $500 in damages. And a motion for a new trial having been overruled and a judgment rendered on the verdict, the case comes before us upon alleged errors committed in the progress of the trial, and in overruling the motion for a new trial.

The fundamental question in the case is, whether Gardiner, who had hired his slave to Lemmons, can maintain this action against the defendants who were sub-hirers from Lemmons, and obtained the possession from him. The objection is, that there was no contract or privity between the plaintiff and the defendants. But having acquired from Lemmons the actual possession and the right for the entire residue of his term, upon which the plaintiff as owner had the immediate reversion, they were bound to deliver the slave, if living, at the end of the term to the plaintiff and not to Lemmons, who had no right to the possession, nor in fact any right against the defendants not reserved by express contract, except such as might grow out of his own responsibility to the plaintiff for their acts or neglect, and might be necessary to indemnify him against that responsibility by enabling him to meet it.

But the case might be such that Lemmons would be under no responsibility for any injury to the plaintiff's reversionary interest, occasioned by the act or neglect of the defendants after they acquired his right, as would certainly be the case if the plaintiff had consented that Lemmons might transfer his right to the defendants for the residue of the year, or had sanctioned the transfer. And yet it cannot be doubted that, although in such case there would be no actual contract between them and the plaintiff, the law would impose upon them the duty of taking reasonable or ordinary care of the slave while in their possession; and that for any violation of this duty to the injury of the plaintiff's reversionary interest, he might maintain an

ADAMS, &c.
vs.
GARDINER.

Judgment of the circuit court.

2. A bailee for hire is bound to ordinary care and diligence in the preservation of the thing hired. If he transfer the possession, still being bound to the owner, the transferree may be responsible to him.

3. If A hire a slave for a year, and at the end of six months hire to B for the remainder of the year, B is responsible to the owner for any permanent injury to the slave arising from neglect. He who voluntarily takes possession of another's property is bound to take reasonable care for its preservation.

action against them for the injury. This can only be denied, by assuming that if the owner of property lets it to one individual for a designated period, and within the term consents that his bailee may transfer his particular interest to a designated individual who receives the transfer, the law withdraws its protection from the reversionary interest, and leaves the transferree under no responsibility for the due care and preservation of the property while in his possession. But such an assumption is contrary to reason and the general principles of law. The law affords constant protection to every recognized legal right, and it holds to a reasonable responsibility every individual who voluntarily assumes, whether by right or wrong, the possession of the property of another. If the possession be obtained by trespass, the trespasser, though he restore the property, is liable for any deterioration caused by his act or neglect. If it be obtained by bailment, the law, in the absence of express stipulations, determines the rights and duties of the parties according to the nature of the bailment, and with a view to the just enjoyment of the right or interest acquired by the bailee, and to the just protection of the reversionary interest or right of property remaining in the bailor. The bailee entrusted with the temporary possession is, in effect, a trustee or quasi trustee, bound to an appropriate degree of care or diligence in preserving the thing bailed, because it is the property of another to whom he is bound to restore it. In a bailment by hiring for use, the bailee is bound to ordinary care and diligence in the preservation of the thing. If he transfers his possession and entire interest to another, and still remains bound for due care and diligence in the preservation of the property by his assignee, the latter may be responsible to him for such neglect as would render the former liable to the original bailor. But the first bailee having, after the transfer, no interest in the thing or its preservation except on account of his own responsibility over, if he be under no such responsibility his transferree is

under no implied obligation or duty to him for the preservation of the property, and would not be responsible for any want of ordinary care, however injurious to the reversionary interest, unless he is under a direct duty and responsibility to the reversioner himself.

We are of opinion that such duty and responsibility do arise, by operation of law, from the fact of acquiring and assuming the temporary possession and interest of the original hirer. Because, in the first place, the assignee taking the temporary possession and interest with knowledge of the immediate reversionary right of the original bailor, assumes the place and known duty of the assignor with respect to the restoration of the property, and consequently with respect to its preservation. Secondly, because he who assumes the possession of another man's property, is bound by a general principle of law to use reasonable care for its preservation while in his possession, and is liable to the party injured by the want of such care. A man is bound to use his own property so as not to injure another, and much more must he be bound to proper use and treatment of the property of another while in his possession. This obligation results of course in favor of the party whose interest is to be regarded, and may be subject to injury by its violation. And it cannot be material whether the possession, which imposes the obligation, is derived immediately fron him or from another under recognition of his rights, if indeed such recognition be itself material. Nor does it seem to be material to the existence of this obligation on the part of the actual possessor to the owner of the property, that there either should or that there should not be a continuing responsibility for the same thing on the part of the intermediate bailee. He and his assignee may each be liable separately to the owner, and the assignee may be liable to his assignor contingently, and to the owner absolutely, or the only responsibility may be that of the assignee to the owner.

ADAMS, &c.
vs.
GARDINER.

We are satisfied, therefore, that Gardiner, as the owner of Kitty, may maintain an action on the case for the injury to his reversionary interest, occasioned by improper neglect on the part of the defendants while she was in their possession; and that as she was on hire to Lemmons, for a year, the defendants having, with knowledge of that fact, obtained her from Lemmons for the residue of the year, were bound to use that care which belongs to the bailment for hire, which is such as men of ordinary prudence use, under like circumstances, with respect to their own slaves; and that if by their failure to use such care, Kitty died, they are responsible to him for that injury.

A further question arises in the case, in consequence of the admission of Lemmons and his wife to testify on the trial as witnesses in behalf of the plaintiff, to which the defendants objected and excepted. The competency of both of these witnesses depends upon that of Lemmons the husband. The ground of exception, as stated in the court below, was that Lemmons was responsible that the slave should be taken care of, and was answerable if the plaintiff failed in this suit. It is also urged in argument that if Lemmons and the defendants were equally liable, and the plaintiff had his election which to sue, then Lemmons, by his testimony, shifts the costs and damages from himself on the defendants. In answer to these objections it is to be observed, that the question is not whether it was by the neglect of Lemmons or by that of the defendants that the death of Kitty was occasioned, but only whether the defendants improperly neglected her while in their possession, and if so, whether her death was the consequence of such neglect. If Lemmons could have been made liable for that neglect, he was called to prove, and he and his wife did prove, the very neglect on which his liability depended. What Lemmons swore in this case would be evidence against him in an action against him for the consequences of the same neglect. And it is no more certain that a judgment for the plaintiff in this

4. A witness is not incompetent on account of interest, unless that interest be direct; nor is he incompetent where the verdict for either party would equally benefit him.

case would bar an action against Lemmons, than that a judgment for the defendants, founded on a verdict disproving either the alleged neglect or its alleged consequence, would bar it. The plaintiff, of course, after recovering satisfaction from the present defendants could not maintain an action for the same injury against Lemmons. But the competency of the witness depends upon the immediate effect of the judgment in subjecting him to or freeing him from liability, and not upon its tendency to render it more or less probable that he will be sued upon an existing liability. (*Greenleaf on Evidence*, §397, 400.) If the prosecution to trial of the suit against these defendants, when the plaintiff had an election to sue them or to sue Lemmons, did not preclude him from afterwards suing Lemmons, a mere judgment against them would not. And if because the action, whether against Lemmons or against the defendants, would in each case be for precisely the same injury arising on the same facts, a judgment against the defendants in this action would bar a subsequent suit against Lemmons, there is at least as much reason to say that a judgment for the defendants in this action would bar a subsequent suit against Lemmons, for a neglect on the part of the defendants which the plaintiff could not establish against them.

It would present a singular result, if the plaintiff failing in this action, not upon the ground that the defendants were not liable to him for the alleged neglect, but on the ground that they had not been guilty of any injurious neglect, should in another action recover damages against Lemmons for the same alleged neglect of the present defendants, and if Lemmons should, thereupon, recover against the present defendants the same amount of damages on account of the same neglect. It is questionable whether, in prosecuting the present action, the plaintiff should not be regarded as taking the direct responsibility of the defendants to him in lieu of that of Lemmons, and thus merging or discharging the two in-

termediate liabilities, which might have been assert-
ed in an action by him against Lemmons, and in
one by Lemmons against the defendants. But be
this as it may, it is not certain, upon the facts pre-
sented in this record, that Lemmons was liable to the
plaintiff for the neglect of the defendants, when it oc-
curred or when this suit was brought. If he was not,
no judgment in this action could render him liable;
and if he was, any judgment which might be render-
ed, would equally operate, on whichever side it might
be, if not to bar an action against him, to render it
only more or less probable that one would be brought.
The judgment either way would be of no avail to
Lemmons against the plaintiff unless as a bar. He
could in no event be made liable to the costs of this
suit, and was, as we think, a competent witness on
the side of the plaintiff.

The opinions of the circuit court, in giving and re-
fusing instructions, were in accordance with the prin-
ciples of this opinion upon the matters to which they
refer. And as the evidence, though contradictory,
authorized the verdict, and a new trial was refused by
the circuit court, we are not at liberty, under the doc-
trines of this court, to set it aside.

Wherefore the judgment is affirmed.

*Thurman, Hardin,* and *Johnson,* for plaintiffs; *Grigs-
by,* for defendant.